THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SUMMIT ELECTRIC SUPPLY**
**COMPANY, INC.**

            Plaintiff,

    vs.                                         No. 1:07-cv-0431 MCA/DJS

**INTERNATIONAL BUSINESS**
**MACHINES CORPORATION,**

            Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant International Business Machines Corporation's Motion to Dismiss [Doc. 6], filed June 28, 2007. Having considered the parties' submissions,[1] the relevant law, and otherwise being fully advised in the premises, the Court concludes that the Motion should be GRANTED in part and DENIED in part.

**I.     BACKGROUND**

This lawsuit arises from a business dispute between Plaintiff Summit Electric Supply Company, Inc. (Summit) and Defendant International Business Machines Corporation (IBM). Summit is a wholesale distributor of electrical products. [Doc. 1, ¶ 1.] Summit contracted with IBM to assist in implementing financial and distribution system computer software. [Id., ¶¶ 4–9.] The parties signed a Statement of Work (SOW) and started the

---

[1] The submissions the Court considered are: IBM's Motion to Dismiss [Doc. 6] and Brief in Support [Doc. 7], Summit's Brief in Opposition [Doc. 8], IBM's Reply Brief [Doc. 9], and Summit's Surreply [Doc. 15]. Except as described in more detail below, the Court did not consider the exhibits attached to any of these submissions.

project in April 2005.  [Id., ¶¶ 9–10.]

Summit alleges that the relationship was fraught with problems from the beginning. The relationship continued to deteriorate and ultimately ended when, according to Summit, IBM abandoned the project and terminated the agreement in November 2006.  [Doc. 1, ¶ 13.]

Summit filed its Complaint for Damages (Complaint) on May 3, 2007, asserting claims for: (1) violation of the New Mexico Unfair Practices Act; (2) breach of contract; and (3) misrepresentation.  IBM moves the Court to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     LEGAL STANDARDS

Until recently, a motion to dismiss for failure to state a claim was granted only if it appeared beyond doubt that the plaintiff could prove "no set of facts in support of his claim which would entitle him to relief."  *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99 (1957)).  In a case decided shortly before this motion was filed, however, the Supreme Court concluded that this oft-quoted language has "earned its retirement."  *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1969 (2007).  *Conley*, according to the Supreme Court, "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 127 S.Ct. at 1969.

In order to survive a motion to dismiss now, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1969).  While a

complaint attacked under Rule 12(b)(6) does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of the entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964–65 (citations omitted). The complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of the alleged conduct. *See Twombly*, 127 S.Ct. at 1965.

The Court still accepts as true all well-plead allegations, and views them in the light most favorable to the plaintiff. *Ridge at Red Hawk, LLC*, 493 F.3d at 1177. "Well-plead," however, means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 127 S.Ct. at 1965. Overall, the complaint must "possess enough heft" to show that the pleader is entitled to relief. *Twombly*, 127 S.Ct. at 1965–66.

### III.   ANALYSIS

IBM argues that the Complaint should be dismissed in its entirety. The Court addresses each of Summit's causes of action below.

#### A.   Count I - Unfair Practices Act (UPA)

IBM argues that the heightened pleading standard of Rule 9(b)—rather than the relaxed pleading standard of Rule 8(a)—applies to Summit's UPA claim. According to IBM, Summit's UPA claim should be dismissed because it does not satisfy the heightened pleading standards applicable to claims of fraud.

The Court does not agree that Rule 9(b) applies to Summit's claim under the UPA. Rule 9(b) requires that the circumstances constituting fraud be stated with particularity:

> In all averments of fraud...the circumstances constituting fraud...shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). Rule 9(b)'s particularity requirement applies only to claims that are premised on fraud. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1151–52 (10th Cir. 1997) (claim that requires plaintiff to show only a material misstatement was not "premised on fraud" and thus did not trigger Rule 9(b)'s particularity requirements).

The Court concludes that Summit's UPA claim is not premised on fraud and therefore does not trigger Rule 9(b). Fraud requires an intent to deceive, as well as an intent to induce reliance. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 994 (10th Cir. 1999); *Cain v. Champion Window Co. of Albuquerque, LLC*, 164 P.3d 90, 97 (N.M. Ct. App. 2007). Under the UPA, however, intent to deceive is irrelevant to establishing liability. *Russey v. Rankin*, 911 F.Supp. 1449, 1460 (D.N.M. 1995). The UPA applies to all misleading or deceptive statements, whether intentionally or unintentionally made. *Woodworker's Supply, Inc.*, 170 F.3d at 994; *Ashlock v. Sunwest Bank of Roswell*, 753 P.2d 346, 347 (N.M. 1988), *overruled on other grounds*, *Gonzales v. Surgidev Corp.*, 899 P.2d 576 (N.M. 1995). Because a prima facie case under the UPA may be established without alleging fraud, Rule 9(b) is inapplicable. *See Schwartz*, 124 F.3d at 1252.

While recognizing that there are no New Mexico state or federal cases requiring UPA claims to be plead with particularity, IBM nevertheless argues that the heightened pleading

standard should apply because courts in other districts have required it.  [Doc. 7 at 4.]  In *Burton v. R.J. Reynolds Tobacco Company*, for example, the district court apparently was persuaded that Rule 9(b) applied to impose a heightened pleading standard on claims under the Kansas Consumer Protection Act.  *Burton v. R.J. Reynolds Co.*, 884 F.Supp. 1515, 1524 (D. Kan. 1995).  Though the Kansas act does not require an intent to deceive, the court summarily concluded that Rule 9(b) applied.  Other than to opine generally that "the policy reasons for requiring fraud actions to be pled with particularity would apply equally to actions brought under the KCPA," the court did not articulate the reason for requiring a heightened pleading standard.  *Burton*, 884 F.Supp. at 1524.  In *Duran v. Clover Club Foods Company*, the United States District Court for the District of Colorado reached a similar conclusion under the Colorado Consumer Protection Act.[2]  *Duran v. Clover Club Foods Co.*, 616 F.Supp. 790, 793 (D. Colo. 1985).

This Court nevertheless concludes that extending Rule 9(b) to a claim under the UPA would be inconsistent with Tenth Circuit case law.  The Tenth Circuit has clearly held that Rule 9(b) is inapplicable to claims that are not grounded in fraud.  *Schwartz*, 124 F.3d at 1152 (10th Cir. 1997).  Furthermore, Rule 9(b) imposes a special pleading requirement that is contrary to the general "short and plain" simplified approach of the federal rules.  5A

---

[2]The conclusion that claims under state consumer protection acts are subject to heightened pleading under Rule 9(b) is not universal.  *See*, *e.g.*, *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.Supp.2d 439, 445 (S.D.N.Y. 2005) (claim for deceptive practices under New York's consumer protection statute is not subject to Rule 9(b) heightened pleading requirements); *U.S.ex rel. Polied Envtl. Svcs., Inc. v. Incor Group, Inc.*, 238 F.Supp.2d 456, 463 (D. Conn. 2002) (holding that Rule 9(b) does not govern the pleading of Connecticut Unfair Trade Practices Act claims).

5

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1297, at 181 (3d ed. 2004). Requiring heightened pleading for UPA claims would thus also be inconsistent with the principle that Rule 9(b) should be construed narrowly and not extended to other legal theories.[3] *See id.*

### B. Count II - Breach of Contract

Summit's breach of contract claim is based upon IBM's alleged failure to perform under a document entitled "Statement of Work" (SOW) purportedly signed by both parties. The SOW is quoted in the Complaint, but a copy of the document, which is alleged to consist of 141 pages, is not attached to the Complaint. [Doc. 1, ¶¶ 6–7, 9.]

IBM's arguments with respect to the breach of contract claim are based solely on documents that are extrinsic to the Complaint. As explained below, to the extent the Court may consider these extrinsic documents, they do not require dismissal of the breach of contract claim.

#### 1. IBM's Exhibits

There are two exceptions to the rule that a court should not look beyond the confines of the complaint when deciding a Rule 12(b)(6) motion. *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002). First, the court may consider argument contained in the parties' memoranda concerning the motion to dismiss. *MacArthur*, 309 F.3d at 1221. Second, the defendant may submit for the court's consideration a copy of a document

---

[3] Because Rule 9(b) does not apply to the UPA claim, the Court need not consider IBM's argument that the Complaint fails to plead this cause of action with particularity.

referenced in the complaint if it is (1) central to the plaintiff's claim and (2) indisputably authentic. *MacArthur*, 309 F.3d at 1221. IBM argues that the second exception applies to the two documents submitted as exhibits to its brief.

### a. Exhibit A - Portions of the SOW [Doc. 7-2]

The SOW is central to Summit's breach of contract claim and it apparently is undisputed that IBM's Exhibit A is an authentic copy of several pages from the SOW. Having examined Exhibit A, however, and considered the parties' arguments, the Court concludes that Exhibit A does not require dismissal of Summit's breach of contract claim. It does not demonstrate that the claim is defectively plead. Exhibit A's only significance at this point in the proceedings is to suggest a potential dispute as to what the parties intended as the scope and terms of the contract.

According to IBM, the SOW demonstrates that the agreed scope of work was to be defined by another document called the "Business Blueprint."[4] The SOW indicates that development of the Business Blueprint is the second of four phases in the overall project and once approved by Summit, "will become the official scope documents for the project." [Doc. 7-2 at 4.] IBM claims that the breach of contract claim therefore must be plead in relation to the Business Blueprint, rather than the SOW. [Doc. 7 at 10–11.]

Summit, however, does not agree that the Business Blueprint was to define the scope of the contract. Summit characterizes the Business Blueprint as a tool that was to be created as part of the performance of the contract. [Doc. 8 at 16.]

---

[4] A copy of the Business Blueprint has not been provided to the Court.

On a motion to dismiss, the Court cannot resolve what appears to be a factual dispute regarding the agreed scope of the contract. The purpose of a motion to dismiss is to test the legal sufficiency of the pleadings. The Court therefore must reject attempts to defeat the Complaint that rely on shifting focus away from the pleadings and onto extrinsic matters. Determining the nature and significance of the Business Blueprint or determining what the parties intended when they stated that the "Business Blueprint would become the "official scope document[] for the project" are matters that cannot be determined with reference solely to the allegations in the Complaint. These issues are beyond the scope of a motion to dismiss.

Exhibit A does not demonstrate that there is anything defective about the breach of contract claim as plead within the Complaint. Furthermore, Exhibit A does not support IBM's argument that the "Complaint and the SOW are at odds." Exhibit A rather tends to support Summit's allegation that the parties considered the SOW a binding contractual agreement. The Court does not dismiss the possibility that other agreements may have been made. However, because IBM does not appear to claim that the SOW was not a binding contract, for purposes of this Motion the Court considers as well-plead Summit's allegations that the SOW constituted a binding contract between the parties. In sum, to the extent the Court can consider Exhibit A, it does not demonstrate that Summit's breach of contract claim fails to state a claim upon which relief can be granted.

### b.     Exhibit B - Portions of the "IBM Customer Agreement" [Doc. 7-3]

IBM argues that another document, called the IBM Customer Agreement, contains additional terms such as a choice of law provision and a merger clause that the Court should consider. IBM points to language in Exhibit A (portions of SOW) which states that the complete agreement consists of the SOW and "the IBM Customer Agreement or IBM Agreement for Services, as applicable, (or any equivalent agreement signed by the both of us)." [Doc. 7-2 at 5.] According to IBM, Exhibit B contains pages from the document that the SOW refers to as "the IBM Customer Agreement."

The Court cannot consider Exhibit B. First, the IBM Customer Agreement is not mentioned in the Complaint. Second, Summit asserts that Exhibit B has no application to the case. [Doc. 8 at 6.] The Court therefore cannot conclude at this time that it is "central" to Summit's claim. Finally, Summit asserts that Exhibit B is an unsigned, undated document that does not identify Summit as a party. It is therefore a disputed document. IBM's Exhibit B thus fails every element necessary to qualify for the exception to the rule that the Court may not go beyond the pleadings when deciding a motion to dismiss.

### 2.     IBM's arguments

The choice of law provision that IBM argues is applicable to this case states that: "The laws of the State of New York govern this [IBM Customer Agreement]." [Doc. 7-3 at 3.] The Court is not persuaded by IBM's argument that this alleged choice of law provision requires Summit's breach of contract claim, which is based on the SOW, to be plead in

accordance with New York law. In any event, on this motion to dismiss, the Court cannot consider the IBM Customer Agreement or any choice of law provision it may contain.

In short, IBM's attacks on the breach of contract claim are all based on documents attached as exhibits to IBM's brief. IBM has offered no arguments that are confined to the four corners of the Complaint. Absent any arguments that the Complaint is defective without reference to extrinsic documents, the motion to dismiss must be denied as to Count II.

### C. Count III - "Misrepresentation"

The Complaint contains a claim for "misrepresentation" which IBM attacks on several grounds. The Complaint does not specify whether the claim is for fraudulent or negligent misrepresentation. The two torts are distinct, however. *Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 953 P.2d 722, 735 (N.M. Ct. App. 1997) (distinguishing fraudulent misrepresentation from negligent misrepresentation). Summit has failed to adequately plead either claim.

The Court does not accept Summit's argument that it is "clear" claims for fraudulent and negligent misrepresentation are alleged in the alternative. [Doc. 8 at 3.] As discussed below, elements of each claim are lacking. Furthermore, conduct that is intentionally fraudulent or misleading ordinarily cannot also be characterized as negligent. *Ledbetter v. Webb*, 711 P.2d 874, 879–80 (N.M. 1985).

#### 1. Fraudulent misrepresentation

To the extent Summit has attempted to plead a claim for fraudulent misrepresentation, the claim must be dismissed. IBM argues that Summit's "knew or should have known"

allegations fail to state a claim for fraud. [Doc. 7 at 8–9.] The Court agrees. Even accepting all the factual allegations as true and viewing them in the light most favorable to Summit, the Complaint does not state a claim for fraudulent misrepresentation.

As discussed above in connection with Summit's UPA claim, fraud requires both an intent to deceive and an intent to reduce reliance. Specifically, the elements of fraudulent misrepresentation are: (1) a misrepresentation of fact, (2) either knowledge of falsity or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation. *Cain*, 164 F.3d at 97.

Summit's purported claim for fraudulent misrepresentation is defective because it fails to allege that IBM intended to deceive Summit or to induce reliance. The Complaint states that IBM "knowingly or negligently" made misrepresentations as "described in paragraphs 5, 7, 8, 11, and 12." [Doc. 1, ¶ 23.] However, nowhere in the referenced paragraphs does Summit suggest that IBM made the alleged misrepresentations with an intent to deceive.

Summit's sole and isolated reference to "fraudulent" conduct is conclusory and without any supporting factual averments. [Doc. 1, ¶ 25.] Furthermore, it is not alleged as a separate element to establish liability for fraud, but expressly in support of a request for punitive damages. The term "fraudulent" is strung together with other types of conduct (malicious, willful, reckless, wanton, fraudulent, bad faith) that generally support a claim for punitive damages. *See* UJI 13-1827 NMRA 2007 (punitive damages instruction listing malicious, willful, reckless, wanton, fraudulent, or bad faith conduct).

Reviewing the Complaint in its entirety, the Court finds no factual allegations that plausibly support an inference that IBM acted with fraudulent intent. The Complaint simply does not possess enough heft to state a claim for fraudulent misrepresentation.[5]

### 2. Negligent misrepresentation

IBM makes several arguments challenging Summit's purported claim for negligent misrepresentation. The Court rejects IBM's arguments, but concludes that the Complaint nevertheless fails to state a claim for negligent misrepresentation.

First, to the extent IBM argues that negligent misrepresentation must be plead with particularity, the Court disagrees.[6] In New Mexico, the law of negligent misrepresentation is governed by negligence principles, rather than the intent to mislead, and differs from the tort of deceit or fraud. *State ex rel. Nichols v. Safeco Ins. Co. of Am.*, 671 P.2d 1151, 1154 (N.M. Ct. App. 1983). Negligent misrepresentation is not premised on fraud, and is thus not subject to Rule 9(b).

Second, IBM argues that a claim for negligent misrepresentation is barred by a merger clause contained in the IBM Customer Agreement attached as IBM's Exhibit B. As discussed above, however, the Court cannot consider Exhibit B or any merger clause it contains.

---

[5]Because the Court concludes that Summit's purported claim for fraudulent misrepresentation omits to allege essential elements necessary to establish this cause of action, there is no need to address IBM's arguments that the Complaint fails to plead fraud with particularity or that it is predicated on statements of opinion.

[6]IBM retreats somewhat from this position by conceding in its reply brief that "Summit's negligent misrepresentation claim should not be subject to Rule 9(b)." [Doc. 9 at 2.]

The Court nevertheless concludes that Summit has failed to state a claim for negligent misrepresentation. To recover under a claim of negligent misrepresentation, Summit must show, in addition to damages: (1) that IBM made a material misrepresentation of fact, (2) that Summit relied upon the misrepresentation, (3) that IBM knew the representation was false or made it recklessly, and (4) that IBM intended to induce Summit to rely on the misrepresentation. *Saylor v. Valles*, 63 P.3d 1152, 1158 (N.M. Ct. App. 2002). Summit must also show that IBM had a duty of disclosure and that Summit's reliance was justifiable. *Ruiz v. Garcia*, 850 P.2d 972, 978–80 (N.M. Ct. App. 1993). Moreover, a case relied upon by both parties plainly states that "[n]egligent misrepresentation requires that the person receiving information have a right to rely upon it." *Yeitrakis v. Schering-Plough Corp.*, 804 F.Supp. 238, 242 (D.N.M 1992) (citations and quotation marks omitted).

Summit's claim for negligent misrepresentation is defective, at a minimum, because it fails to allege that IBM had a duty of disclosure, that the misrepresentations were material, that Summit's reliance was justifiable, and that IBM intended to induce reliance. Summit argues that allegations in paragraphs 18 and 23 support the "intent to induce reliance" element. [Doc. 15 at 10.] Paragraph 18, which is plead in support of the UPA claim, alleges only that Summit was deceived or misled. It does not allege that IBM intended to induce reliance. [Doc. 1, ¶ 18.] Paragraph 23 also fails to allege intent to induce. It states only that IBM "knowing or negligently" made misrepresentations. [Id., ¶ 23.]

Summit argues that its claim for negligent misrepresentation is sufficient because it alleges that IBM "knew or should have known" that the representations were false.

13

However, this allegation is not sufficient of itself to state a claim when numerous other elements are lacking.

Because IBM's argument for dismissal of the negligent misrepresentation claim is based solely on a purported merger clause, Summit may not be on notice of these shortcomings in its claim for negligent misrepresentation.[7] The Court nevertheless concludes that Summit will not be prejudiced by dismissal of the purported negligent misrepresentation claim if it is allowed an opportunity to replead.

Given the Complaint's failure to clearly distinguish between fraudulent and negligent misrepresentation and the failure to plead either cause of action adequately, the Court believes it is appropriate to dismiss Count III in its entirety. However, it generally is not appropriate to dismiss claims *sua sponte* and partially on grounds not raised by the defendant, without an opportunity to amend. *Cf. McKinney v. Oklahoma, Dept. of Human Svcs.*, 925 F.2d 363, 365 (10th Cir. 1991). Therefore, Count III will be dismissed without prejudice and Summit shall be afforded an opportunity to amend the Complaint for purposes of asserting claims for fraudulent and/or negligent misrepresentation, if it is able.

\* \* \*

**IT IS, THEREFORE, ORDERED** that IBM's *Motion to Dismiss* [Doc. 6] is **GRANTED in part and DENIED in part.** The Motion is **denied** as to Count I (Unfair

---

[7]This would seem unlikely, however, because Summit specifically argued in its surreply that all elements of the cause of action are alleged in the Complaint. [Doc. 15 at 9–10.] In an abundance of caution, however, the Court will assume that Summit is not on notice of pleading deficiencies not expressly raised in the Motion.

Practices Act) and Count II (Breach of Contract). The Motion is **granted** as to Count III (Misrepresentation).

**IT IS FURTHER ORDERED** that Count III is **Dismissed without prejudice.**

**IT IS FURTHER ORDERED** that Summit shall have **leave to amend** its Complaint for Damages for the purpose of attempting to allege claims for fraudulent misrepresentation and/or negligent misrepresentation. Any amended complaint Summit wishes to file is due by April 14, 2008.

**IT IS, FURTHER ORDERED** that IBM's alternative request for a more definite statement is **DENIED**.

**SO ORDERED** this 31st day of March 2008**,** in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge