IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**SUMMIT ELECTRIC SUPPLY CO., INC.,**

    **Plaintiff,**

vs.                                                Civil No. 07-0431 MCA/DJS

**INTERNATIONAL BUSINESS MACHINES CORP.,**

    **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant International Business Machines Corporation's Motion to Quash Subpoena **[Doc. No. 47]**, filed on September 2, 2008, and Summit's Cross-Motion to Compel **[Doc. No. 51]**. Summit Electric (Summit) filed its response and cross-motion to compel on October 3, 2008. No reply was filed. On June 23, 2008, Summit served upon Christina Austin, a former IBM employee, a subpoena *duces tecum*. Defendant International Business Machines Corporation (IBM) moves the Court to quash the subpoena. Summit's cross-motion to compel moves the Court to compel IBM to produce all records IBM has obtained or later obtains from Austin by way of IBM's subpoena in this action.

### I.  Factual Background

This action arose over a dispute regarding a 2005 contract between IBM and Summit in which IBM contracted to install and implement SAP software for Summit. In its Complaint, Summit alleges breach of contract. Summit also alleges that IBM made numerous

misrepresentations, both pre-contract and contract, regarding Wholesale Express[1] that were materially false, e.g., that IBM had contoured SAP software to meet Summit's needs in an effective, cost efficient, and timely manner.  Compl. ¶5.

Christina Austin is a former IBM employee who served as IBM's project manager on the Summit contract.  In 2005, Ms. Austin accepted a job at SAP, the software vendor, and left IBM.  However, IBM arranged to have Ms. Austin continue to manage the Summit project while she was employed by SAP.  In the same year, Ms. Austin left SAP and accepted a job at Summit.  At this time, Ms. Austin no longer works for Summit and resides in Florida.

IBM argues that the discovery Summit seeks is precluded by an agreement Ms. Austin executed with IBM during her employment.  Specifically, this agreement states Ms. Austin "will not . . . disclose to anyone outside of IBM and its subsidiaries or use in other than IBM's and its subsidiaries' business, either during or after [her] employment, any confidential information of IBM or its subsidiaries . . . ."  IBM Mot. to Quash Subpoena; Ex. A ¶1.  The agreement Ms. Austin executed with IBM also required Ms. Austin to "return to IBM all property in [her] possession, whether or not containing confidential information including but not limited to, diskettes and other storage media, drawings, notebooks, reports, and other documents belonging to IBM or its subsidiaries."  *Id.*

On April 30, 2008, IBM served upon Ms. Austin a subpoena *duces tecum* that was issued from the United States District Court for the Southern District of Florida.  Although Ms. Austin did not formally respond to IBM's subpoena, she did provide IBM documents she obtained while employed by IBM.

---

[1] Wholesale Express is a preconfigured, "All in One" SAP business enterprise software.  Summit's Resp. in Opposition to Mot. to Quash at 2.

On June 6, 2008, Summit's counsel produced two internal IBM e-mails at the deposition of an IBM employee. Summit's counsel indicated he received the two e-mails from Ms. Austin. Consequently, on June 10, 2008, IBM's counsel wrote to Summit's counsel explaining Ms. Austin's contractual obligations to IBM and demanded IBM's property and information be returned immediately. IBM Mot. to Quash Subpoena; Ex. D. Summit did not return anything to IBM.

On June 23, 2008, Summit provided to IBM a subpoena it was serving on Ms. Austin which called for the production of "[a]ll documents and communications in whatever form they exist, whether typewritten, handwritten, electronic or otherwise, that refers to, relate to, or concern IBM's proposed or actual sale of services to Summit Electric in 2004-2005 or IBM's attempted implementation of SAP software at Summit Electric in 2005." *Id.*; Ex. E. After Summit's subpoena was served upon Ms. Austin, IBM requested Ms. Austin's counsel allow IBM to review any documents or electronic information in Ms. Austin's possession that she obtained while employed at IBM so that IBM could assert any applicable privilege.

Ms. Austin's counsel delivered two DVD's to IBM. One DVD contained documents Ms. Austin obtained while employed by IBM; the other DVD contained a subset of the first DVD, comprising documents related to Summit. IBM asserts the DVD's contained approximately 300,000 documents, e-mail messages, and programs that it alleges Ms. Austin improperly removed from IBM and are subject to Ms. Austin's contractual promises to IBM. IBM requests an order requiring Ms. Austin to return to IBM "every document or file she obtained while employed by IBM." IBM Mot. to Quash Subpoena at 7.

## II. Discussion

The Court views discovery requests with the liberality contemplated by the federal rules. Discovery is designed to ""[m]ake trial less a game of blind man's buff and more a fair contest with basic issues and facts disclosed to the fullest possible extent." *United States v. Proctor and Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986-87 (1958). Federal courts construe discovery rules liberally to insure a litigant's right to discovery is broad and flexible. *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963). Under Rule 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED.R.CIV.P 26(B)(1).

The test of relevancy is significantly broader at the discovery stage, therefore, discovery is permitted as to matters which "[are] or may become relevant," *Payer, Hewitt & Co. v. Bellanca Corp.*, 26 F.R.D. 219, 221 (D.Del. 1960), or "might conceivably have a bearing" on the subject matter of the action, *Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542 (E.D.N.Y. 1964); *see also E.I. duPont de Nemours & Co. v. Deering Milliken Research Corp.*, 72 F.R.D. 440, 443 (D.Del. 1976)( "Unless it is palpable that the evidence sought [to be made subject to discovery] can have no possible bearing upon the issues, the spirit of the new [federal] rules calls for every relevant fact . . . to be brought out for the inspection not only of the opposing party but for the benefit of the court . . . .")(citing *Hercules Powder Co. v. Rohm & Haas Co.*, 3 F.R.D. 302, 304 (D.Del. 1943)).

Rule 45(c)(3)(B)(i) provides, in pertinent part, that, the court "may on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." However, "[t]here is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*,

665 F.2d 323, 325 (10th Cir. 1981). The party resisting discovery must first establish the information sought is a trade secret and the demonstrate its disclosure might be harmful. *Id.* "If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action." *Id.* The court must balance the need for the trade secrets against the claim of injury resulting from disclosure. *Id.*

In its response, Summit contends IBM did "not even allege, let alone attempt to demonstrate, that Austin's records regarding Summit constitute bona fide 'trade secrets or other confidential research, development, or commercial information . . . .'" Summit's Resp. in Opposition to Mot. Quash at 1. Summit also argues that IBM failed to present "any evidence that, the disclosure of Austin's records to Summit would result in defined and serious injury." *Id.* Alternatively, Summit argues that, "[e]ven if IBM could show that Austin's records contained trade secrets or similarly confidential information, and even if IBM could demonstrate harm, the Court should still deny IBM's motion because the 'information is relevant and necessary to the action." *Id.* at 2.

In support of its position, Summit asserts Ms. Austin has personal knowledge from conversations with and e-mail communications from IBM employees that IBM's pre-contract and contract representations to Summit were false. *Id.* at 3. At her September 25-26, 2008 deposition, Ms. Austin testified that, during her employment with IBM, IBM staffed the Summit project with "subpar" instead of "qualified" resources, that she warned IBM regarding this matter and the resulting risk to the project, and that although the IBM manager agreed with her assessment, IBM did nothing to rectify the problem. *Id.*; Ex. 2 (Austin Deposition). To corroborate Ms. Austin's testimony, Summit submitted an e-mail Ms. Austin authored addressing her concerns regarding the Summit project. *Id.*; Ex. 3. The e-mail includes the response of IBM's

-5-

Summit project manager to Ms. Austin's assessment. Ms. Austin further testified that IBM misrepresented to Summit the status of Wholesale Express, advised consultants to hide information from Summit, and coached consultants to misrepresent their experience in order for Summit to accept them on the Summit project.

Summit also cites to several cases to support its argument that federal law does not limit discovery based on confidentiality agreements. *See e.g. Zoom Imagin, L.P. v. St. Luke's Hosp. & Health Network*, 513 F.Supp.2d 411 (E.D.Pa. 2007)(consultant's confidentiality agreements with competing provider and third parties did not preclude discovery); *Sprinturf, Inc. v. Southwest Recreational Industries, Inc.*, 216 F.R.D. 320 (E.D.Pa. 2003)(defendants were not entitled to protective order based on claim that disclosure of the information would violate a confidentiality agreement entered into between unnamed third party and defendant regarding product described and claimed in patent);*Grumman Aerospace Corporation v. Titanium Metals Corp. Of Am.*, 91 F.R.D. 84 (E.D.N.Y. 1981) (holding a confidentiality agreement with a consultant was not the basis for quashing a subpoena in an antitrust case).

Finally, Summit argues that IBM's motion to quash, from a procedural and analytical standpoint, is more properly framed as a motion for protective order pursuant to Rule 26(c) of the federal rules of civil procedure. Summit contends that under the *Centurion* burden-shifting analysis, IBM has made no evidentiary showing that the records in Austin's possession are "trade secrets or other confidential research, development, or commercial information" for purposes of Rule 26 or 45, or show through evidence that it would be harmed.

The Court agrees. IBM has not met its burden to establish the information Summit seeks from Ms. Austin are trade secrets or confidential information. IBM also failed to demonstrate its disclosure might be harmful. Furthermore, Summit has established that the information sought is

relevant and necessary to prove its case against IBM. The Court notes that on October 28, 2008, the parties filed a Joint Motion for Entry of Protective Order [Doc. No. 56], requesting the district judge enter the agreed upon stipulated protective order the parties submitted to the district judge on September 19, 2008. Because the proposed stipulated protective order was not accompanied with a motion, the district judge had not filed it. To correct this oversight, the parties filed the motion. Once the district judge files the stipulated protective order, it will sufficiently protect sensitive and confidential information from being used improperly and protect the interests of both parties. Accordingly, the Court will deny IBM's Motion to Quash Subpoena and grant Summit's motion to compel.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Defendant International Business Machines Corporation's Motion to Quash Subpoena **[Doc. No. 47]** is **DENIED.**

**IT IS FURTHER ORDERED** that IBM's Cross-Motion to Compel is **GRANTED.**

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**