IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SUMMIT ELECTRIC SUPPLY CO., INC.,**

    **Plaintiff,**

vs.                                                                                           Civil No. 07-0431 MCA/DJS

**INTERNATIONAL BUSINESS MACHINES CORP.,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Summit Electric's Second Motion to Compel **[Doc. No. 70]**, filed on December 1, 2008, and fully briefed on March 17, 2009.  Summit Electric ("Summit") moves the Court for an order compelling Defendant International Business Machines Corporation ("IBM") (1) to produce records related to an internal IBM review; (2) to answer interrogatory number 6; and (3) to produce records which have already been produced but are inaccessible.  The parties have resolved their dispute regarding "inaccessible records."  Therefore, Summit withdraws its motion as to these records.

### I.  Factual Background

This action arose over a dispute regarding a 2005 contract between IBM and Summit in which IBM contracted to install and implement SAP software for Summit.  Specifically, Summit alleges IBM failed to deliver and implement a preconfigured SAP business enterprise software solution called "Wholesale Express" at the fixed price of $2,308,640, and within the fixed time-period of 23 weeks.  Pl.'s Second Mot. to Compel at 2.  IBM represented to Summit that Wholesale Express was an "All-in-One" preset template of SAP specifically designed to apply

easily and quickly to wholesale distribution operations. *Id.* Moreover, IBM represented to Summit that Wholesale Express had been implemented before and was ready-to-run and ready-to-use in the wholesale distribution environment. *Id.* Finally, IBM represented to Summit that IBM would staff the Summit project with employees and consultants who were knowledgeable about Wholesale Express and experienced in implementing it and the SAP software. Based on these representations, Summit selected IBM over other vendors.

In late March 2005, the parties executed the contract, also called the Statement of Work. On April 18, 2005, IBM commenced the implementation of Wholesale Express at Summit. According to Summit, it soon became clear that Wholesale Express was not sufficiently developed and was not "ready-to-run and ready-to-use in the wholesale distribution environment. Summit also contends IBM failed to adequately staff the implementation of Wholesale Express at Summit with IBM employees and consultants experienced with Wholesale Express or preconfigured SAP solutions. Consequently, IBM failed to complete the implementation of Wholesale Express at Summit and abandoned the project on or about November 18, 2005.

Subsequently, Summit filed the instant action, alleging IBM breached the contract and made numerous pre-contract misrepresentations about Wholesale Express that were materially false. Summit also alleged IBM knew or should have known that Wholesale Express was not ready-to-run or ready-to-use and not an excellent fit for Summit.

## II.  Discussion

The Court views discovery requests with the liberality contemplated by the federal rules. Discovery is designed to ""[m]ake trial less a game of blind man's buff and more a fair contest with basic issues and facts disclosed to the fullest possible extent." *United States v. Proctor and Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986-87 (1958). Federal courts construe discovery

rules liberally to insure a litigant's right to discovery is broad and flexible.  *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963).  Under Rule 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  FED.R.CIV.P 26(B)(1).

The test of relevancy is significantly broader at the discovery stage, therefore, discovery is permitted as to matters which "[are] or may become relevant," *Payer, Hewitt & Co. v. Bellanca Corp.*, 26 F.R.D. 219, 221  (D.Del.1960), or "might conceivably have a bearing" on the subject matter of the action, *Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542 (E.D.N.Y.1964); *see also E.I. duPont de Nemours & Co. v. Deering Milliken Research Corp.*, 72 F.R.D. 440, 443 (D.Del.1976)( "Unless it is palpable that the evidence sought [to be made subject to discovery] can have no possible bearing upon the issues, the spirit of the new [federal] rules calls for every relevant fact . . . to be brought out for the inspection not only of the opposing party but for the benefit of the court . . . .").

## A.  Andresen Project Management Review

Through discovery, Summit learned IBM conducted multiple internal reviews of the implementation of Wholesale Express at Summit in which IBM risk managers arrived at the same conclusion as Summit.  As a result of these internal reviews, IBM determined Wholesale Express was not as fully developed as expected and required additional developmental activities.  Pl.'s Mot. to Compel; Ex. 6 (Yates's project management review).  IBM also determined it had failed to assign qualified staff to the Summit project, admitting it had difficulty finding qualified individuals.  IBM also admitted that, of those individuals assigned to implement Wholesale Express at Summit, very few of them had ever implemented an "all in one."  Additionally, IBM graded its delivery of the Summit project a "D" (the lowest grade).

Summit contends that, although IBM has produced several internal reviews, IBM has withheld records relating to a review that began in August 2005. The 2005 review involved Robert Andresen ("Andresen Review"). Summit moves the Court to order IBM to produce all records relating to the Andresen Review. Specifically, Summit seeks e-mails Mr. Andresen sent to IBM employees informing them of his review of the Summit Statement of Work. Summit contends IBM has withheld many e-mail communications about Mr. Andresen's review on the grounds of attorney-client privilege.

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." *United States v. Phelan*, 3 Fed.Appx 716, 718 (10th Cir. 2001). The privilege is narrowly construed. *Fisher v. United States*, 425 U.S. 391, 403 (1976). A party claiming the attorney-client privilege must prove its applicability. *Foster v. Hill* (In re Foster), 188 F.3d 1259, 1264 (10th Cir. 1999). In diversity cases, state law supplies the rules concerning attorney-client privilege. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998).

"Under New Mexico law, the attorney-client privilege applies to 'confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.'" *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007)(*quoting Bd. of Comm'rs of Doña County v. Las Cruces Sun News*, 2003-NMCA-102, ¶25, 134 N.M. 283, 76 P.3d 36, 44). The privilege protects communications with in-house counsel as well as outside attorneys. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683 (1981). However, "[c]hanneling work through a lawyer rather than having non-legal personnel perform it does not provide a basis for claiming attorney-client privilege." *Anaya*, 251 F.R.D. at 650.

In its response, IBM contends Mr. Andresen did not prepare a written review and thus cannot be compelled to "produce that which does not exist." Def.'s Resp. at 3. However, Summit is very clear that its motion "does not hinge on the existence of a formal report." Pl.'s Reply at 3. Summit submitted evidence showing Mr. Andresen agreed to review the Summit Statement of Work and keep Mr. DeBella, Mr. Scherer, and Mr. Mantas informed as to his findings. *See* Pl.'s Reply; Ex. 3. IBM contends the requested material is protected by the attorney-client privilege, but it has tendered, for *in camera* review, the privileged documents listed on its Third Supplemental Privilege Log. Accordingly, IBM shall provide the Court with all privileged documents listed in its Third Supplemental Privilege Log. Moreover, to the extent IBM has not produced other records or communications which relate to Mr. Andresen's review and which are not identified on IBM's Third Supplemental Privilege Log, IBM shall produce them.

## B.  Interrogatory No. 6

Summit moves the Court to compel IBM to fully respond to Summit's Interrogatory No. 6, which states:

> Does IBM contend that the "Business Blueprint document" as defined in IBM's counterclaim reduced or limited in any way the modules, functionality, or requirements that were stated to be in scope for the Summit implementation as described in Section 3.2 in Appendix G of the Statement of Work? If "yes," then separately and specifically identify each such module, functionality, or requirement that would reduce or limit and further specify each individual document from the "Business Blueprint document" that so reduced or limited that module, functionality, or requirement.

Pl.'s Second Mot. to Compel; Ex. 1. IBM answered Interrogatory No. 6 as follows:

> IBM objects to this interrogatory because it seeks discovery of a matter that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM further objects to this interrogatory as unduly burdensome and oppressive, because, under the terms of the SOW, "the Business Blueprint once approved by Summit Electric Supply management, will become the official scope documents for the project."

*Id.*  Summit contends this issue is central to both parties' claims.  Summit argues that the comparison between the scope of the Statement of Work and the scope of the Business Blueprint goes to the very heart of the dispute between the parties.  Summit alleged in its complaint that the Statement of Work is the contract between the parties.

However, IBM argues the Business Blueprint comprises the "official scope documents for the project."  Def.'s Resp. at 6.  IBM contends the Statement of Work "was supplanted as to scope by the Business Blueprint."  Def.'s Resp. at 7.  IBM argues "Summit seeks discovery regarding a matter that is wholly irrelevant– all questions of scope will be rendered by the Business Blueprint, and how it compares to the [Statement of Work] does not matter."  *Id.*  Therefore, the question of whether the Statement of Work is the contract between the parties or whether the Business Blueprint is the "operative contract document" is a central issue in dispute.[1]

"'Contention' interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required."  *Starcher v. Correctional Medical Systems*, Inc., 144 F.3d 418, 421 n. 2 (6th Cir.1998), *aff'd sub nom. Cunningham v. Hamilton County*, 527 U.S. 198, 119 S.Ct. 1915 (1999).  Courts have recognized the important benefits that result from clarifying and narrowing the issues in litigation as early as possible.  *IBP Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321-23 (D.Kan. 1998).  Morever, Rule 33 (c) of the Federal Rules of Civil Procedure and the advisory notes to the rule clearly indicate that requests for opinions or contentions that call for application of law to fact

---

[1] The Court rejects IBM's "parol evidence" argument.  Moreover, the Court declines to rule on whether *Irwin Seating Co. v. International Business Machines Corp.*, No. 1:04-CV-568, 2007 WL 2351007 (W.D. Mich August 15, 2007, *aff'd*, No. 07-2116, 2009 WL 32711 (6th Cir. Jan. 6, 2009), has application to this case, finding it unnecessary for its ruling on the motion to compel.

are proper.  FED.R.CIV.P 33( c) & Advisory Committee Notes (1970 Amendments).  Nonetheless, some courts have criticized the use of contention interrogatories, especially if they are broadly drafted.  *See Roberts v. Heim*, 130 F.R.D. 424, 427-28 (N.D.Cal. 1989)("[T]he Courts are loathe to require a party to 'write basically a portrait of their trial' for the other parties . . . . ").

Applying these standards, IBM's objection on the grounds of relevancy is overruled.  IBM also objected to Interrogatory No. 6 on the grounds that the interrogatory was "unduly burdensome and oppressive."  In opposing discovery on the grounds of over-breadth, a party has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to the requested discovery is unduly burdensome.  *See Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 651 (D.Kan. 2004).  Thus, an objecting party cannot sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing.  *See, St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.,* 198 F.R.D. 508, 511-13 (N.D. Iowa  2000).  IBM has not met its burden of showing that Summit's discovery request is burdensome.  Thus, IBM's objection on the grounds of over-breadth is overruled.  IBM shall fully answer Summit's Interrogatory No. 6

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Summit's Second Motion to Compel is granted in part.  IBM shall submit its Third Supplemental Privilege Log to the Court on or before April 17, 2009, for *in camera* review.

                                                   **DON J. SVET**
                                                   **UNITED STATES MAGISTRATE JUDGE**